et al. Mr. Black for the appellant, Mr. Ogden for the appellees. Good morning, Your Honors. Good morning. May it please the Court, I'd like to reserve two minutes of my time for rebuttal. I believe that our briefs deal adequately with the issues on appeal. I would like to emphasize the following. The District Court erred in holding that the relator's complaint was based solely on publicly disclosed information. The Court's formulation of the public disclosure bar in Springfield Terminal cannot be fulfilled without the non-public information supplied by the relator. That is, that the pencils imported by the defendants could not have been produced in Indonesia, in Taiwan, as declared under Customs. They could not what? Could not have been produced in Taiwan or Indonesia as declared under Customs Declarations. I thought in the District Court you agreed in your complaint that the X in the equation was that the pencils were not manufactured, were manufactured in China. Okay. That they were not. No, that they were manufactured in China. That's correct. Okay. Is that what you just said? No, it's not. I'm sorry, Your Honor. What I said was is that the pencils could not have been produced in Indonesia, in Taiwan, as declared under Customs Declarations. And the reason for that is because the non-public information on which the complaint was based was the relator's investigation of the supplier, of the defendant's suppliers in those countries. Can I just take you to the one? Let me just focus on the aspect of the record that concerns me so you can focus on that, okay? Yes. In the complaint, did you represent the relator in the District Court? Yes. Okay. So you know the complaint? Yes. Okay. So the complaint says that the Chinese pencils, Chinese manufactured pencils, have unique characteristics which should lead the buyers to know they're made in China, quote, without more, right? That's correct. That's in your complaint. That's correct. And then, okay, and then in your opposition to the motion to dismiss, you list three unique characteristics of Chinese pencils, something called apex-to-apex bonding. What is that? The apex-to-apex bonding is the way a pencil with six sides is produced. The apex is the, if you will, the tips of the pencil, whereas flat-to-flat, the way pencils are conventionally made in most countries. Okay. Well, but it's the next two that I want to ask you about, which is off-center leads and inferior finishing. That's what you say? Yeah. All right. And those two, those two, off-center leads and inadequate finishing, those are both revealed in the ITC report, right? They're mentioned in the ITC report. Well, they're not mentioned, they're there, right? They're identified as characteristics. So here's my question. Your complaint says there are unique features of Chinese-made pencils. You identify two of them, and those two are in the ITC report. So given that, how can you satisfy this part of the act? It looks like you've conceded public disclosure. No, Your Honor, I have not conceded public disclosure. The apex-to-apex bonding, by the way, was not in the ITC report. I didn't ask you about the apex-to-apex bonding. I asked you about the other two, center, off-center lead, and inadequate finishing. Those are the two I asked you about. Okay. And you agreed with me that those two are mentioned in the ITC report. And in your complaint, you say those two characteristics are not only unique, but should lead anyone to know that pencils with those characteristics were made in China without more investigation. Tell me what's wrong with that. The reason we put that allegation in the complaint was to establish knowledge under the False Claims Act, which includes reckless disregard. So why doesn't it serve both purposes? I understand why you did that, but doesn't this relate to a concession also? Harvey later saw the pencils on the shelves and realized that these are likely to be of Chinese origin based on these characteristics. He then went out and performed an investigation by going to the factories to determine whether or not, in fact, those factories put or did produce. I understand all that. Do you want to focus on my specific question as to why your complaint essentially isn't, as they say, pleading you out of court? Okay. That's my question. If I may, because the pencils do not tell us whether or not the defendant's pencils, the ones that they imported, actually came from China. We cannot determine the origin of those pencils based on the ITC report. In addition to the ITC report, you need the actual physical pencils. Wait, but if these are unique characteristics of Chinese pencils and anyone can determine them, doesn't that solve the Quinn formula? Without more, no. You have to know what the pencils look like. You can't know what the pencils look like unless you have the physical pencil, which comes from the store shelves, which is not a public disclosure. Public disclosure requires some ability to identify a false claim. If you have the information about how they declared certain pencils from Indonesia or Taiwan, together with the description from the ITC report, you do not know if they made a false claim without the pencils. I'm a little confused because the statute itself is a little odd in the sense that things which are on the shelves in billions of copies apparently aren't public, but we put that work. But if you have in official files information with respect to characteristics, the critical characteristics of the pencils, what is it that you gain by looking at the pencils? I mean, I just think they would either confirm or refute what was in the files, but if it confirms it, that's just another... Okay, if you take the false claim that they came from Indonesia or Taiwan and you combine it with the characteristics of the pencils, even if I can see that this is a public disclosure, which I do not believe it is separately, you cannot determine if they have made a false claim because you don't have, based on a public disclosure, you can determine it if you go look at the pencils, but the pencil itself is not a public disclosure under the statute. It's not one of the items that are listed in the statute that constitute a false claim as the court in Graham County set out. It's not a category of jurisdiction stripping disclosure. You have to have something that... To have a public disclosure, you have to have something that's listed in the statute as a public disclosure. I understand that, but you're also... Well, the problem of notice to the defendants comes from the quality of the pencils. That's right. Right? And the quality of the pencils, as an information about that critical information about the quality of the pencils, is in the ITC files, at least strong contention to that effect by the defendants. So I'm still not getting what it is that was contributed. Well, oh, what was contributed was our investigation. We spent $50,000 to $100,000 going to look to see whether or not these manufacturers could actually produce those pencils. And we concluded that they did not. And once one of our investigators... That just confirms the proposition already established, supposedly, that these pencils have characteristics that mark them as Chinese pencils. Yeah, but we would not have filed our complaint just based on that because we didn't think we had enough to establish that they had actually made false claims. It's an indication that these pencils are from China, but with the only... The one marker that is an absolute marker for Chinese pencils is apex-apex bonding, and that is not in the ITC report. We would not have made that statement, that it merges into proof, without that characteristic. But that is a key characteristic. Any pencil that has apex-apex bonding is highly likely to be of Chinese origin. Not all pencils that have apex... All right, thank you. You're out of your time. Thanks. Good morning, Your Honors. I'm David Ogden, and I represent the Appalese, Staples, Office Max, Target, and Industries for the Blind. And I hope to address two issues in my brief time this morning to emphasize them. The first is to respond to any concerns about the holding of the district court with respect to public disclosure, which we think was a correct holding for many of the But second, to focus on one of our alternative grounds for affirmance in the event... Before you get to that, could I just ask you, I thought I heard counsel say that what's missing here is exactly which pencils are the subject of this complaint. Did you hear that? I did, Your Honor. And do we know from the record that... What's the answer to that? Well, I think the most important thing about that point, Your Honor, is that the relator draws an inference from public facts with respect to what pencils, what specific pencils came from China. That's an inference he draws in his opening brief at page 10. He specifically says that his allegations about identifications of specific shipments of pencils for which the defendants made false claims of origin, were based on the manifest information submitted to customs by all shippers and compiled by organizations such as Pierce Global Intelligence Solutions. He doesn't have a basis to identify specific pencils or specific shipments. He simply believes that pencils were imported from Asia by these four companies, these four entities, and infers that they were in these shipments. That's all he's doing. So that's not anything he's adding. That's an inference he's asking the court to draw. And the critical issue point is that in addition to all the disclosures that were in the ITC reports about pencil characteristics, and by the way, nowhere in his complaint does he say that apex to apex bonding is some special separate thing. That's something he said on appeal only. But in addition to all that, the ITC reports actually identify three of the name defendants by name and a fourth by description as likely importing pencils from China. So he is simply drawing inferences from public facts to identify specific pencils when actually the public record is much stronger. And this is why he obviously has not done anything beyond public disclosures. If his specifics are based on public disclosures, he's added nothing. He's just asking the court to draw an inference, which the government could have drawn. The question for public disclosure purposes under this court's decision in Settlemire is if the prior public disclosures could at least have alerted law enforcement authorities to the likelihood of wrongdoing. And here, the public disclosures, I believe, did more than anything that this relator has offered to suggest the likelihood of wrongdoing because, first of all, all of the manifest information is there with whatever the relator is relying on. And second, the public record specifically says that these defendants may be importing pencils from China. That's more than any of these inferences. And I think a second critical thing, which goes to both points, to both the public disclosure and the scienter point, is a critical change of position that the relator has made on appeal. Your honors were quite right to say that the linchpin of his case below, and this is why the district court below focused so much on these pencil characteristics, the linchpin was his claims that these pencils, you just had to look at them. If you knew about pencils, all you had to do was look at them to know that they were made in China. In his opposition to our motion to dismiss at 14, docket 64, he said a simple visual examination would show certain well-known unique features common to pencils manufactured in China and distinct from pencils manufactured elsewhere. That was his theory below. That's why Judge Leon focused so extensively on those pencil characteristics. Now he says something radically different. He now, at opening brief at page 12, he concedes that pencils manufactured in the very countries that he says defendants claimed as countries of origin could have the identical characteristics. He says, without additional intelligence, that is, beyond the appearance, the quality of the pencils does not disclose they originate in China. It is possible that factories in Taiwan, Indonesia, and Vietnam produce substandard pencils. Well, that's flatly inconsistent with his theory below, flatly inconsistent with what he presented, and it entirely undermines his substantive case. It also, frankly, makes clear that all of this business about pencil characteristics adds absolutely nothing to what was in the public record already. It also shows that his investigation, these facts he purports to have found, that these factories, he alleges, couldn't have produced all the pencils. But that adds nothing because there's nothing to say that even if that's so, number one, that the defendants didn't buy the pencils that the factories did produce, or number two, if the factories couldn't produce all that defendants purchased, that those factories couldn't have obtained them from other sources outside China that look just like Chinese pencils, i.e., pencils in Indonesia, pencils in Taiwan, pencils in Vietnam, that he says look like the same pencils. Now, that change of position doesn't help him at all on public disclosure because there's a public disclosure that these defendants may have been importing pencils from than anything he suggests, and it completely undermines the value of anything that he's added. He further tells us on appeal that his entire case on Sienter is based, and in fact, he just confirmed that the linchpin below, he conceded that the notice that he alleges that the defendants were on, which gave rise to Sienter, comes from the quality of the pencils. Well, if the pencils quality was consistent with manufacture in the countries in which he says they were claimed to have been manufactured, how in the world can the appearance of the pencils give notice of anything other than it looks good, it looks consistent? And that is a simple failure as a matter of Sienter. It's his whole case, and there's just nothing there. The bottom line is he's conceded to try to solve a problem that he fails to solve on public disclosure, that he has no case of Sienter. And you know he knows it because what he does, both below and in this court, is to argue for standards of Sienter that are at flat variance with this court's decision in the SAIC case. He knows he can't show reckless disregard by a specific individual. He conceded it below. He clearly can't allege that. So below he said he was relying on a theory of collective knowledge, said it as clearly and straight as that. He said his complaint alleged, quote, that the submission of false claims was truly a corporate effort and the individuals involved in the fraud are irrelevant, close quote. That's what he said below. Of course, he had to say that because he has no individuals, and he specifically concedes that the folks filling out the forms likely had no idea, as he posits, that they were from China. But in SAIC, this court expressly said, as clearly as could be said, that a theory of collective knowledge is, quote, inconsistent with the act's language, structure, and purpose. This is a fraud statute, and it requires an individual to recklessly unaware of the true facts and the false claim about the facts. He specifically says he has no such individual. He can't make such an allegation. The complaint should be dismissed on that ground if the court needs to reach it. His second argument, and I confess I don't understand it, but he argues somehow that because this is a customs case, the standard of reckless disregard doesn't apply. That instead, a mere negligence standard under the custom statutes should govern. But SAIC said clearly that in this fraud statute, negligence is not enough. At 626 F3rd at 1274, there has to be deliberate avoidance or aggravated gross negligence. So he's arguing for a negligence standard because he's got no possible shot at that when he's conceded that his whole Scienter case, based on what the pencils look like, goes nowhere because the pencils look like they were made where the defendants said they were made. Your Honor, do you have any questions? If not, I'll cede the rest of my time. Thank you. Thank you. Did counsel have any time left? You can take one minute if you would like it. Your Honor, if you believe that there has been a public disclosure, which I think you should read the briefs very carefully again, and you'll see that there has not been. But if you do believe that, you should consider that the relator is the original source of that information. While we didn't make the argument below and the court, the court itself addressed the issue and considered the information in the record. There is sufficient information in the record to conclude that he is an original source. That is because of the information that is in the complaint and also in his declaration in which he said that he's been in the industry for decades. He knows this stuff and he provided this stuff. He probably provided it to the attorney that provided it to the ITC. If we go back, we'll be able to establish that. Okay. Thank you. Thank you both. Case is closed.